Roman S. Gontarek, John J. Gontarek v. Commissioner.
Roman S. Gontarek, Gontarek v. Commissioner
Docket Nos. 28267, 28275.
United States Tax Court
1952 Tax Ct. Memo LEXIS 334; 11 T.C.M. (CCH) 102; T.C.M. (RIA) 52025; February 4, 1952
John M. Hudson, Esq., 1170 Penobscot Bldg., Detroit, Mich., for the petitioners. John L. King, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: In these consolidated proceedings respondent determined the following deficiencies in income tax for the calendar year 1945: Roman S. Gontarek
$6,833.21
John J. Gontarek
$7,108.27
The issues fall into three categories. First: Was the loss incurred by petitioners upon the sale in 1947 of machinery and equipment used in their business in which they were engaged as partners during the years 1942 to 1947, includible in computing a net operating loss carry-back claimed as a deduction for 1945? Second: Were petitioners entitled *335 to the full amount of depreciation claimed on depreciable assets used in the partnership business for 1945? Third: Were petitioners entitled to claimed deductions for sales, entertainment, and the expenses of operation, including depreciation of their personal automobiles, incurred in carrying on their business? Findings of Fact Some of the facts have been stipulated and are found as stipulated. Petitioners are brothers. At all times here material they lived in Michigan. They filed their individual income tax returns for 1945 on the cash basis with the collector of internal revenue for the district of Michigan. They were equal partners in Brothers Manufacturing Company, which was organized in 1942 for the manufacture of tools, jigs, dies, and fixtures for other concerns. The original business dropped off during 1942 and the partnership turned to the manufacture of aircraft and radar parts and other Government jobs in connection with the war effort. This was continued through 1945 when their war contracts were terminnated. They picked up such different kinds of work as they could during 1946 and 1947, and tried the plastics business unsuccessfully. Petitioners were machinists *336 and expert tool and die makers of many years experience. In 1946 the partnership acquired machinery which cost about $29,675.50. This machinery was purchased because the partnership reconverted its shop completely to go into the plastics business. The old machinery and equipment had been acquired in the period 1942 to 1945 - most of it prior to 1945 - and with the exception of two items was used machinery and equipment when acquired. Where necessary it was rebuilt and reconditioned by petitioners. During this period new machinery and equipment was not available without a Government priority rating. After the end of the war the partnership was unable to secure additional business suitable for the old machinery and equipment. During the years 1942 to 1945, inclusive, the partnership occupied two buildings, which were acquired on contract in 1942. At the time of acquisition the buildings were around 30 years old. The shop of the partnership was located in a converted one-story garage of cement block construction. The office of the partnership was located in an adjacent frame building which had been used as a barber shop and was converted into an office. Both buildings were in very *337 bad condition when acquired and had to be reconditioned for use by the partnership. The buildings were adaptable for use only as garage in normal or peace times. They were in a locality which was not zoned generally for manufacturing. In June 1947 the partnership sold at auction substantially all the machinery and equipment used in its business. The partnership accepted the Internal Revenue Agent's adjustment for the taxable year 1946 increasing their tax by $7,593.62, thereby giving the partnership a net profit for 1946. The partnership lost money during 1947. On the sale of the machinery and equipment the partnership sustained a net loss, including equipment scrapped as unsaleable and auctioneer's commission, of $20,861.88. In determining the deficiencies here involved respondent did not allow this amount in computing the net operating loss carry-back deductions of petitioners. The machinery, equipment, furniture and fixtures, building, and building improvements used in the partnership business, the cost thereof, and the depreciation sustained thereon, as shown on the partnership return for the calendar year 1944, were as follows: Depreciation
Depreciation
Asset
Cost
Prior Years
For 1944
Machinery
$18,571.85
$3,286.24
$3,748.46
Equipment
2,035.08
1,154.86
427.04
Furniture & Fixtures
1,374.39
39.84
143.92
Building
2,988.50
132.96
Building Improvements
2,571.11
57.28
$27,540.93
$4,480.94
$4,509.66
*338 In 1944 the partnership sold machinery acquired in 1942 at a cost of $3,840. The accumulated depreciation thereon was $1,294.61 and the proceeds of sale were $2,700. Depreciation rates for 1944 of assets as computed from figures shown on the partnership tax return for the taxable year 1944 are: Machinery
20%
Equipment
21%
Furniture & Fixtures
10%
Building
4.4%
Building Improvements
2.2% The Internal Revenue Agent in a meeting with petitioners in early 1947 adjusted only the machinery account by allowing a depreciation rate of 10 per cent. The partnership executed Treasury Form 875 agreeing to this adjustment. The machinery, equipment, furniture and fixtures, building, and building improvements used in the partnership business, the date of acquisition thereof, the cost thereof, and the depreciation sustained thereon, as shown on the partnership return for the calendar year 1945, were as follows: Depreciation
Depreciation
Asset
Acquired
Cost
To 1/1/45
For 1945
Machinery
1942
$18,571.85
$7,034.70
$2,467.00
Equipment
1942
2,035.08
1,581.90
447.29
Furniture & Fixtures
1942
1,374.39
183.76
137.44
Building
1942
2,988.50
132.96
149.43
Building Improvements
1942
2,571.11
57.28
256.20
$27,540.93
$8,990.60
$3,457.36
*339 In 1945 the partnership sold machinery acquired in 1943 at a cost of $1,800. The accumulated depreciation thereon was $594.46 and the proceeds of sale were $1,350. Depreciation rates for 1945 of assets as computed from figures shown on the partnership tax return for the taxable year 1945 are: Machinery
13%
Equipment
22%
Furniture & Fixtures
10%
Building
5%
Building Improvements
10% The Internal Revenue Agent in a meeting with petitioners in early 1948 adjusted only the rates of depreciation for the machinery and equipment accounts by allowing a 10 per cent rate to be used on each account. The partnership executed Treasury Form 875 agreeing to this adjustment. For 1945 respondent disallowed $853.59 of the total depreciation claimed. The machinery, equipment, furniture and fixtures, building and building improvements, used in the partnership business, the date of acquisition thereof, the cost thereof, and the depreciation thereon, as shown on the partnership return for 1946, were as follows: Depreciation
Depreciation
Asset
Acquired
Cost
To 1/1/46
For 1946
Machinery
1942-1945
$14,121.39
$7,612.63 *
$1,412.14
Machinery
1946
29,675.50
1,827.08
Equipment
1942-1945
2,460.50
1,023.89
246.05
Equipment
1946
938.32
74.99
Furniture & Fixtures
1942-1945
1,374.39
340.99
137.44
Building
1944
2,988.50
537.23
149.42
Building Improvements
1944
2,571.11
313.48
257.11
$54,129.71
$9,828.22
$4,104.23
*340 Depreciation rates for 1946 of assets computed from figures shown on the partnership tax return for the taxable year 1946 are: Depreciation
Asset
Acquired
Rate
Machinery
1942-1945
10%
Machinery
1946
10%
Equipment
1942-1945
10%
Equipment
1946
10%
Furniture & Fixtures
1942-1945
10%
Building
1944
5%
Building Improvements
1944
10% No adjustment of these rates was made by respondent. When depreciation rates for the assets of the business were first determined the partnership left the determination in the hands of their accountant, who was subpoenaed by respondent to testify but who did not appear. Petitioners themselves did not know the rates of depreciation used for their *341 machinery in 1944. The details of depreciation were handled by the accountant exclusively. John acted as tool and die maker, purchasing agent, salesman, and traveling agent during the years 1942 through 1947 for the partnership. Roman was strictly in the shop end of the business and had supervision of the night shift of approximately 15 persons. In 1945 petitioners devoted their entire time to the business, spending sometimes as many as 20 hours a day. Each petitioner did a certain amount of entertaining in behalf of the partnership business. They bought lunches and dinners for purchasing agents of customers, purchased gifts, and entertained at several parties. In 1945 the partnership allowed each petitioner and salesman $150 per month as sales expenses and for entertaining. On its return for 1945 the partnership claimed a deduction for sales expense of $7,750.09, which included $3,000 claimed as additional expense reimbursed to petitioners. The respondent disallowed the deduction for the additional $3,000. In 1945 petitioners used their personal automobiles in carrying on the partnership business. They had no truck to deliver materials or goods manufactured and sold by them and *342 employed their own automobiles and those of their employees for this purpose. In some instances they were reimbursed for gas and oil. They also used their automobiles in traveling outside Detroit on partnership business. The automobile used by John in the business in 1945 was acquired in 1941 in a used condition at a cost of $1,200. John's return for 1945 indicates he spent $62.20 for insurance and claimed $694 as depreciation and for the use of his automobile. 25 per cent of the claimed deductions was allowed. Roman used an automobile in the business which he acquired in 1944 at a cost of $1,645. His return for 1945 indicates he spent $66.59 for insurance and sustained depreciation in the amount of $411. 50 per cent of the claimed deductions was allowed. Both petitioners used their automobiles to travel to and from work. Roman lived five miles from the shop and John about two and a half miles. Joh claimed as expenses for business travel the amount of $345 in 1945. This claimed deduction was disallowed for lack of substantiation. Opinion The major issue is whether the loss sustained by the partnership in 1947 on the sale of substantially all its machinery and equipment *343 is a net loss attributable to the operation of the trade or business regularly carried on by petitioners within the meaning of section 122 (a) and (d) (5) of the Internal Revenue Code. [1]
On brief, it is petitioners' *344 position that the assets disposed of in 1947, which disposition brought about the loss in question, were assets used in the partnership business regularly carried on by petitioners and that the sale was necessitated by the falling off after 1945 of the business theretofore carried on and the need of the petitioners for funds with which to discharge certain obligations. It is argued that this loss is one "directly attributable to the operation of the business". In taking this position petitioners frankly recognize that this Court and others have held in a number of cases and under varying circumstances that the loss sustained by an individual on the sale of assets used in his business is not a loss attributable to the operation of the business and therefore is not a net operating loss within the meaning of section 122 (a) and (d) (5). Among the cases cited are Baruch v. Commissioner, 178 Fed. (2d) 402 (C.A. 2), affirming, per curiam, 11 T.C. 96; Sic v. Commissioner, 177 Fed. (2d) 469 (C.A. 8), affirming 10 T.C. 1096; Pettit et al. v. Commissioner, 175 Fed. (2d) 195 (C.A. 5), affirming, per curiam, Tax Court Memorandum Opinion (June 10, 1948), (7 T.C.M. 357); *345 Merrill v. Commissioner, 173 Fed. (2d) 310 (C.A. 2), affirming 9 T.C. 291, Lazier v. United States et al., 170 Fed. (2d) 521 (C.A. 8), affirming 77 Fed. Supp. 241. Nevertheless, petitioners earnestly request a reexamination of the issue in the light of the legislative history of the applicable statute. We have carefully studied petitioners' contentions and the cited cases and conclude that we are bound by the decisions. The loss here involved, in our opinion, was not incurred in the operation of petitioners' business, but, rather, in the almost complete liquidation thereof, it being admitted that the sale was of "substantially all" of the machinery and equipment used in the business. We therefore hold against petitioners on this issue. The depreciation issue is bottomed on the specification of error in the petitions that respondent erred in disallowing "$853.59 of the total of $3,457.36 depreciation sustained on depreciable property used in the business" and respondent's denial. As facts to support this specification petitioners alleged: "In the calendar year 1945 the partnership used in the business machinery acquired in 1942 *346 at a cost of $18,571.85 and equipment acquired in 1942 at a cost of $2,035.08. The depreciation sustained in the calendar year 1945 upon such machinery was not less than $2,467 and the depreciation sustained in 1945 upon such equipment was not less than $447.29, in addition to depreciation sustained on other assets used in the business in the amount of $543.07." In his opening statement counsel for petitioners also described this issue as being the action of respondent in reducing "the depreciation allowable". However, on brief, this issue was broadened to include a reasonable allowance for depreciation, "including a reasonable allowance for obsolescence", and we are asked to find that "The amount of loss sustained in 1945 as a result of obsolescence of such machinery, equipment, furniture and fixtures and building improvements, * * * is the depreciated cost of such facilities, namely $15,694.79." In other words, a total loss. Respondent notices this apparent broadening of the issue on brief, but he has not sought to limit our consideration of the obsolescence facet of the question. On this issue the burden is on petitioners to show that respondent's determination was wrong *347 as well as to produce other evidence from which a proper determination can be made. Lightsey v. Commissioner, 63 Fed. (2d) 254. The only evidence produced by petitioners is their own testimony which shows that they themselves had practically nothing to do with establishing the depreciation rates claimed on their returns and did not know how such rates were determined. The accountant whose responsibility this was did not appear at the hearing though subpoenaed by respondent. We know a large part of the machinery and equipment was old when acquired. But we are not told how old it was or what the term of its remaining useful life might be. Certainly it was useful so long as the partnership was able to obtain business. We are not convinced that these depreciable assets suddenly became valueless in 1945. The adjustments made in depreciation for 1944 and 1945 by the revenue agents were agreed to by petitioners prior to the filing of the petitions herein and in 1946 on the partnership return the lower rates were used by petitioners themselves - some indication that they were reasonable rates. It also seems to us that it is recognition that the machinery and equipment had some *348 useful life beyond 1945, the year in which we are asked to find they were "useless" and "obsolete". On the question of obsolescence we have only the general statements by petitioners that their equipment was obsolete and useless. These are their own conclusions, unsupported, so far as we can see, by any facts of record. Petitioners testified to the effect that they could get no more business after the war because their equipment was "useless" and "obsolete". But it seems to us, after consideration of the record, that petitioner were using these terms in their testimony not in the sense of the tax laws, but in the sense that the equipment was useless because they could obtain no business with which to put it to use. We can find no basis for allowing petitioners to take in 1945 the entire depreciated cost of the machinery and equipment as a loss, as argued on brief. W. B. Davis & Son, Inc., 5 T.C. 1195. Neither can we find that petitioners have produced facts which would justify us in disturbing respondent's determination on the depreciation issue. We find against petitioners on this issue. We turn to the remaining issue, the claimed deductions for sales expenses, the *349 expenses and depreciation for use of personal automobiles and John's travel expense in connection with the business. The record on these items is confusing. Petitioners testified that some records of their expenses were turned over to their accountant, some expenses were estimated, and some carried in their heads. Whatever records there were were not produced at the hearing. No vouchers, canceled checks, receipts, or other vouchers were shown. That some personal use was made of the automobiles is shown by the fact that both petitioners used their cars to go to and from work. Respondent allowed part of the claimed deductions and part was disallowed for lack of substantiation. This record does not contain that substantiation. We find no basis for making allowances in addition to those already made by respondent. Decision will be entered for the Respondent. Footnotes
*. The accumulated depreciation to January 1, 1945 plus depreciation claimed for 1945 minus the accumulated depreciation on machinery sold in 1944 and 1945. The revenue agent reduced allowable depreciation for 1945 on machinery by $609.81 to $1,857.19 and on equipment by $243.78 to $203.51, so that the accumulated depreciation to January 1, 1946, as adjusted, on machinery is $7,612.63 minus $609.81 or $7,002.82 and on equipment is $1,023.89 minus $243.78 or $880.11.↩
1. SEC. 122. NET OPERATING LOSS DEDUCTION. (a) Definition of Net Operating Loss. - As used in this section, the term "net operating loss" means the excess of the deductions allowed by this chapter over the gross income, with the exceptions, additions, and limitations provided in subsection (d). * * *
(d) Exceptions, Additions, and Limitations. - The exceptions, additions, and limitations referred to in subsections (a), (b), and (c) shall be as follows: * * *
(5) Deductons otherwise allowed by law not attributable to the operation of a trade or business regularly carried on by the taxpayer shall (in the case of a taxpayer other than a corporation) be allowed only to the extent of the amount of the gross income not derived from such trade or business. For the purposes of this paragraph deductions and gross income shall be computed with the exceptions, additions, and limitations specified in paragraphs (1) to (4) of this subsection. * * *↩